IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **NOVA DISTRO, INC.** | ) |
| and | ) |
| **TOBACCO HUT AND VAPE FAIRFAX, INC.** | ) |
| *Plaintiffs,* | ) |
| v. | ) Case No. 3:25cv857 |
| **VIRGINIA ATTORNEY GENERAL JASON MIYARES** *in his official capacity,* | ) |
| and | ) |
| **VIRGINIA TAX COMMISSIONER JAMES J. ALEX** *in his official capacity* | ) |
| *Defendants.* | ) |

## COMPLAINT

NOVA DISTRO, INC. and TOBACCO HUT AND VAPE FAIRFAX, INC. ("**Plaintiffs**"), by counsel, assert this Complaint for declaratory judgment and injunctive relief against JASON MIYARES in his official capacity as the Attorney General of Virginia and JAMES J. ALEX in his official capacity as the Tax Commissioner of the Commonwealth of Virginia ("**Defendants**"), and allege as follows:

### INTRODUCTION

1.  Chapter 23.2 of the Virginia Code, entitled "*Retail Tobacco Products and Nicotine Vapor Products Containing Liquid Nicotine*," was passed by the Virginia General Assembly in 2024, codified under Title 59.1 in Va. Code §§ 59.1-293.10—59.1-293.22 ("**Chapter 23.2**"), and subsequently went into effect on July 1, 2025. Chapter 23.2 regulates nicotine vapor products that

contain liquid nicotine, which are more formally known as "electronic nicotine delivery systems" or "ENDS" for short, and are otherwise commonly known as "e-cigarettes" or "vapes" ("**vapes**").

2.   Vapes became popular after Congress passed the Family Smoking Prevention Tobacco Control Act of 2009 ("**TCA**"), which amended the Federal Food, Drug, and Cosmetic Act of 1938 ("**FDCA**")[1] and instructed the United States Food and Drug Administration ("**FDA**") to promulgate rules and regulations for the approval of tobacco products for retail sale. *See Avail Vapor, LLC v. FDA*, 55 F.4th 409, 415 (4th Cir. 2022).

3.   While the TCA specifically "banned the sale of cigarettes with a characterizing flavor (*e.g.,* fruit), [] this ban did not [initially] apply to" vapes. *See id.* (internal citation omitted). Nevertheless, in 2016, the FDA "asserted regulatory jurisdiction over [vapes]…in accordance with its authority to 'deem' new [tobacco] products subject to the strictures of the TCA." *Id.* (citing 21 U.S.C. § 387a(b) and 81 Fed. Reg. 28,974 (May 10, 2016)).

4.   "[T]he TCA requires manufacturers of 'new tobacco products' to submit Premarket Tobacco Product Applications (PMTAs) and receive authorization from the FDA prior to releasing their products on the market" where "[a] 'new tobacco product' is [defined as] any tobacco product that was not 'commercially marketed in the in the United States as of February 15, 2007.'" *Id.* at 414 (citations omitted). Thus, approval for modern tobacco products, such as vapes, requires that Premarket Tobacco Product Applications ("**PMTAs**") be submitted to the FDA.

5.   Plaintiffs here challenge the following sections of Chapter 23.2:

   a.   Va. Code § 59.1-293.14. *Tobacco Retail Enforcement Fund;*

   b.   Va. Code § 59.1-293.15. *Liquid nicotine and nicotine vapor product;*

---

[1] Congress "deliberately chose to place tobacco regulation within the FCDA rather than creating a standalone regulatory regime." *See Iowans for Alts. to Smoking & Tobacco, Inc.* et al. *v. Iowa Dep't of Revenue & Mary Mosiman,* 781 F. Supp. 3d 724, 735 (S.D. Iowa 2025).

        *directory*;

    c. Va. Code § 59.1-293.16. *Liquid nicotine and nicotine vapor product; certification; penalty*;

    d. Va. Code § 59.1-293.17. *Removal or exclusion from directory*;

    e. Va. Code § 59.1-293.19. *Recordkeeping; audits, inspections, and investigations; penalties*;

    f. Va. Code § 59.1-293.20. *Sale or distribution prohibited*; and

    g. Va. Code § 59.1-293.21. *Enforcement; inspection.*

(collectively, the "**Vape Ban**"). Plaintiffs' Complaint requests that this Court **(i)** issue a preliminary and/or permanent injunction barring **(a)** Defendant Miyares from establishing the vape product directory, **(b)** Defendants' enforcement of the Vape Ban, and **(c)** Defendant Alex from approving Tobacco Retail Enforcement Fund expenditures and disbursements; and **(ii)** further issue a declaratory judgment finding that the Vape Ban is unconstitutional under the United States and Virginia Constitutions.

    6.    The Vape Ban disproportionately benefits the largest vape manufacturers in the country, namely, Juul Labs, Inc.; Logic Technology Development, LLC; NJOY, LLC; and R.J. Reynolds Vapor Company (collectively, "**Big Tobacco**") by effectively forcing smaller, local vape manufacturers and retailers, including Plaintiffs, (collectively, "**Small Tobacco**") out of from the Virginia vape market.

    7.    All vapes produced by Big Tobacco (collectively, "**Big Tobacco vapes**") are either tobacco- or menthol-flavored.[2] Vapes produced by Small Tobacco, including Defendant Nova

---

[2] *E-Cigarettes Authorized by the FDA*, U.S. FOOD & DRUG ADMINISTRATION (July 2025), https://digitalmedia.hhs.gov/tobacco/hosted/Authorized-E-Cig-July2025.pdf.

Distro's "Hut Bar" vape product, on the other hand, include **(i)** tobacco- or menthol-flavored, or **(ii)** contain "characterizing flavors,"[3] or flavors ***other than*** tobacco or menthol (collectively, "**Small Tobacco vapes**"). Notably, many of the Small Tobacco vapes on the market today contain these so-called characterizing flavors (collectively "**flavored vapes**").

8. Importantly, the Vape Ban adopts the FDA's regulatory requirements for the manufacture and retail sale of vapes. *See* Va. Code § 59.1-293.16. The only products that have received PMTAs are products made by Big Tobacco. Because the FDA has not granted premarket approval for manufacture and retail sale for any Small Tobacco vape – including flavored vapes – the Vape Ban is the functional equivalent of a wholesale ban on the manufacture, retail sale, and purchase of Small Tobacco vapes in the Commonwealth.

9. To obtain FDA premarket approval for a new vape product, such as Small Tobacco vapes, applicants must submit a PMTA that **(1)** sufficiently demonstrates that the product in question provides a benefit to adult users that adequately outweighs any harm that the product might pose to underaged consumers, and **(2)** includes marketing plans for such product that sufficiently restricts access to underaged consumers. *See Avail Vapor*, 55 F.4th at 425.

10. Historically, for age-restricted consumer goods like alcohol and cigarettes, methods to restrict access to those products by underage consumers include : **(i)** using age-gated brick and mortar stores; **(ii)** requiring age verification at the point of sale; **(iii)** selling products on age-gated online stores; **(iv)** using less vibrant marketing so as to not attract interest from minors; and **(v)** prohibiting the use of marketing materials that target minors.[4]

11. However, submitting a marketing plan that sufficiently restricts access to underage

---

[3] *See Avail Vapor,* 55 F.4th at 415.
[4] *See Avail Vapor,* 55 F.4th at 417, 426.

consumers is nearly impossible for Small Tobacco because the FDA has determined that manufacturing and selling flavored vape products—which make up the majority of Small Tobacco vapes on the market—using methods such as the ones just mentioned are all insufficient to effectively restrict underage access and use of vapes. Therefore, applicants effectively need to "present[] **_novel_** access restrictions" to prevent vape access and use by underage consumers. *See id.* at 426 (citations omitted) (emphasis added). Plaintiffs believe this "novel" access restriction requirement is being applied arbitrarily and capriciously to Small Tobacco.[5]

12.  In fact, of the approximately 26 million different PMTAs submitted by more than 500 different companies between October 2019 and February 2023,[6] the FDA has only granted premarket approval to thirty-nine (39) to date, **_all_** of which are tobacco- or menthol-flavored vapes produced by Big Tobacco.[7] Most vape products currently on the market do not have FDA premarket authorization.[8]

13.  Scientific evidence demonstrates that vape products are less harmful than

---

[5] For example, the sale of alcoholic beverages that are popular among, and commonly subject to abuse, by underage consumers of alcohol is not limited or otherwise restricted in a different manner than alcoholic beverages that are not popular, or not as popular, amongst underage consumers of alcohol in the United States. *See* Michael Siegel, M.D., M.P.h. et al., *Alcohol Brand Preferences of Underage Youth: Results from a Pilot Survey among a National Sample,* NATIONAL INSTITUTE OF HEALTH (October 2011), https://pmc.ncbi.nlm.nih.gov/articles/PMC3202336/pdf/nihms310977.pdf.

[6] Elizabeth Crespi et al., *Decisions of the FDA on premarket tobacco product applications: Changes in the number of unique devices and liquids used by US adults who frequently use electronic delivery systems, 2020-2023*, TOBACCO INDUCED DISEASES (Mar. 22, 2024), https://www.tobaccoinduceddiseases.org/Decisions-of-the-FDA-on-premarket-tobacco-product-napplications-Changes-in-the-number,184240,0,2.html.

[7] *E-Cigarettes, Vapes, and other Electronic Nicotine Delivery Systems (ENDS),* U.S. FOOD & DRUG ADMINISTRATION (July 17, 2025), https://www.fda.gov/tobacco-products/products-ingredients-components/e-cigarettes-vapes-and-other-electronic-nicotine-delivery-systems-ends#:~:text=While%20e%2Dcigarettes%20can%20generally,Risks%20of%20Tobacco%20Products%E2%80%9D%20webpage.

[8] *See Iowans for Alts. to Smoking & Tobacco, Inc.,* 781 F. Supp. 3d at 728.

traditional cigarettes, and are, in fact, more effective smoking cessation alternatives opposed to other nicotine replacement therapies or behavioral support alone.[9] The FDA has expressly recognized as such, noting that "forcing all unauthorized [vapes] off the market could result in [vape] users reverting to more harmful traditional cigarettes."[10] Accordingly, the FDA has continually exercised its discretion[11] ***not*** to take regulatory or enforcement action with respect to Small Tobacco vapes.

14. The FDA's general non-enforcement of the premarket authorization requirement for Small Tobacco vapes and its further non-enforcement of the premarket authorization of flavored vapes specifically, has resulted in more vape product options being available for retail sale and consumption over the past several years. Yet despite an increase in the number of vape product options, 2024 data from the U.S. Centers for Disease Control and Prevention ("**CDC**") showed that 500,000 fewer U.S. youth reported that they currently used vapes compared to the prior year, representing a drop to approximately one-third (1/3) of the amount of U.S. youth who reported using vapes during the "peak" of youth usage in 2019.[12]

15. In spite of the evidence demonstrating the overall reduction of youth consumption of vape products, Big Tobacco affiliates, namely Altria Group, Inc. and its subsidiaries and/or

---

[9] *See e.g.,* Nicola Lindson et al*., Electronic cigarettes for smoking cessation (Review),* COCHRANE DATABASE OF SYSTEMATIC REVIEWS, (Jan. 29, 2025), https://pmc.ncbi.nlm.nih.gov/articles/PMC11776059/pdf/CD010216.pdf (summarizing 90 studies with 29,044 participants).
[10] *See Iowans for Alts. to Smoking & Tobacco, Inc.*, 781 F. Supp. 3d at 728.
[11] Discretion includes the power to choose which cases to enforce, but more importantly, includes the power to choose which cases ***not*** to pursue. Thus, when a state legislature creates its own set of rules—even if identical to the federal rules—the state unlawfully assumes the federal government's power of enforcement and the discretionary power to bring enforcement actions.
[12] *Youth E-Cigarette Use Drops to Lowest Level in a Decade,* U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION (Sept. 5, 2024), https://www.cdc.gov/media/releases/2024/p0905-youth-ecigarette.html.

affiliates Altria Client Services, LLC; Reynolds American, Inc.; Philip Morris USA, Inc.; John Middleton Co.; U.S. Smokeless Tobacco Co.; and Helix Innovations, LLC (collectively, "**Big Tobacco Affiliates**") still successfully lobbied for the passage of Chapter 23.2.[13] Indeed, Richmond-based Altria (the largest tobacco company in the United States and third largest in the world) spearheaded such lobbying efforts, and approximately $632,202 was spent on such efforts to regulate heated tobacco and liquid nicotine and nicotine vapor products between 2023 and 2024.[14]

16. Big Tobacco and the Big Tobacco Affiliates stand to benefit significantly from the enforcement of the Vape Ban because its enforcement will effectively eliminate most of their competitors in the Virginia vape market. Once again, all thirty-nine (39) FDA-approved vapes are manufactured by Big Tobacco; to wit: Juul Labs, Inc.; Logic Technology Development, LLC; R.J. Reynolds Vapor Company; and NJOY, LLC[15] which Altria acquired in 2023.[16]

17. As such, once Defendants begin enforcing the Vape Ban, only Big Tobacco and their respective thirty-nine (39) FDA-approved vape products will be lawfully permitted to be manufactured, sold, and purchased within the Commonwealth of Virginia. *See* Va. Code § 59.1-293.16.

18. Under the Vape Ban, the Attorney General of Virginia is required to "establish and

---

[13] *Altria- Lobbying Client May 2023-April 2024,* THE VIRGINIA PUBLIC ACCESS PROJECT, https://www.vpap.org/lobbying/client/110931-altria/bills/?year=2024.
[14] *See id.*
[15] *E-Cigarettes Authorized by the FDA*, U.S. FOOD & DRUG ADMINISTRATION (July 2025), https://digitalmedia.hhs.gov/tobacco/hosted/Authorized-E-Cig-July2025.pdf.
[16] *Altria Completes Acquisition of NJOY Holdings, Inc.; Updates 2023 Full-Year Earnings Guidance* (June 1, 2023), https://investor.altria.com/press-releases/news-details/2023/Altria-Completes-Acquisition-of-NJOY-Holdings-Inc.-Updates-2023-Full-Year-Earnings-Guidance/default.aspx.

maintain a directory that lists all…liquid nicotine and nicotine vapor products" that are authorized to be manufactured or sold within the Commonwealth of Virginia. *See* Va. Code § 59.1-293.15.

19. For a vape to be included on the Attorney General of Virginia's approved vape directory ("**Directory**"), the following requirements must be met: **(i)** the vape product in question must have received premarketing authorization from the FDA; or be actively under review by the FDA and the FDA has not issued a final decision or such final decision has not yet taken effect; **(ii)** the manufacturer of the vape product in question must provide a copy of the FDA's premarketing approval order along with a certification form, or provide evidence that the given vape product is actively under review by the FDA along with a certification form stating as such; and **(iii)** the manufacturer of the vape product in question must pay a $2,000 fee for the vape product's first certification submission, or pay the $500 recertification fee for that given vape product each year thereafter. *See* Va. Code § 59.1-293.16(B)-(C).

20. If the Attorney General of Virginia excludes or removes a vape product from the Directory, notice must be served upon the manufacturer of the given vape product's registered agent in Virginia. The manufacturer then has ten (10) days to establish that the vape in question meets the statutory requirements of Va. Code § 59.1-293.16, and therefore, should not have been excluded or removed from the Directory. *See* Va. Code § 59.1-293.17(B).

21. The Attorney General of Virginia, the Virginia Department of Taxation, and/or "any other law-enforcement agency of the Commonwealth" are authorized to take enforcement action in the event of any vape products manufactured or sold that are not listed in the Directory. *See* Va. Code § 59.1-293.19(D).

22.     Civil enforcement measures[17] include but are not limited to: **(i)** issuance of a civil penalty of ***$1,000 per day for each vape product*** unlawfully offered for sale until such vape is either removed from the market or otherwise approved by the Attorney General; **(ii)** issuance of a civil penalty of ***$1,000 per day*** for each day that any person who receives, stores, sells, handles, or transports vapes refuses or otherwise fails to cooperate with an audit, inspection, or investigation conducted by an authorized representative of the Attorney General relating to the preservation of records involving the purchase, sale, exchange, receipt, or transportation of vapes in the past three (3) years. *See* Va. Code §§ 59.1-293.20 and 59.1-293.19 respectively.

23.     All revenue generated from the assessment of civil penalties, such as those outlined above, along with appropriated funds, "gifts, donations, grants, [and] bequests…shall be paid into the [Virginia] state treasury and credited to the [Tobacco Retail Enforcement] Fund" (the "**Fund**") established pursuant to the provisions of the Vape Ban. *See* Va. Code § 59.1-293.14. "Moneys in the Fund shall be used solely for the purposes of funding the Department of Taxation's direct and indirect costs of the license administration, [] enforcement program…and the administrative costs of education and training, retail inspections, and unannounced compliance checks…." *Id.* Any such "[e]xpenditures and disbursements from the Fund shall be made by the State Treasurer…upon written request signed by the Tax Commissioner," which is currently Defendant James J. Alex. *Id.*

24.     The Vape Ban requires compliance with the new statutory scheme by December 31, 2025. *See* Va. Code §§ 59.1-293.16 and 59.1-293.20. For Small Tobacco, compliance means they will either face substantial civil penalties, or be forced to cease manufacturing and selling Small Tobacco vapes. The effect of the Vape Ban will force Small Tobacco companies out of businesses

---

[17] The Vape Ban also includes statutorily imposed criminal penalties. *See e.g.,* Va. Code § 59.1-293.16 and Va. Code § 59.1-293.19.

if they cannot sell Small Tobacco vapes and are forced to sell only products made by their Big Tobacco competitors who, in the aggregate, would have a state-endorsed monopoly on available vape products. Virginia vape users, in turn, will be deprived of the ability to purchase and consume their preferred Small Tobacco vapes.[18]

25. Enforcement of the Vape Ban, ***in practice***, would function as a complete ban on the manufacturing, retail sale, and purchase of Small Tobacco vapes in the Commonwealth of Virginia, violating both the United States Constitution and the Constitution of Virginia.

## PARTIES

26. Plaintiff NOVA DISTRO, INC. ("**NOVA Distro**") is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business and registered agent located at 294 West Lee Highway, Suite 101, Warrenton, VA 20186. NOVA Distro is a manufacturer and wholesale distributor of Small Tobacco vapes as well as a Big Tobacco vape retailer.

27. Plaintiff TOBACCO HUT AND VAPE FAIRFAX, INC. ("**Tobacco Hut**") is a corporation organized under the laws of the Commonwealth of Virginia. It maintains its principal place of business at 10470 Fairfax Boulevard, Fairfax, Virginia 22030, and its registered agent at 7951 Gainsford Court, Suite 135, Bristow, Virginia 20136-5115. Tobacco Hut is a retailer that sells both Small Tobacco vapes and Big Tobacco vapes.

28. Defendant JASON MIYARES ("**Miyares**") is the current Attorney General of Virginia, and for purposes of this lawsuit, is sued in his official capacity.

---

[18] Once again, the FDA has already recognized that taking Small Tobacco vapes "off the market could result in [vape] users reverting to more harmful traditional cigarettes." *See Iowans for Alts. to Smoking & Tobacco, Inc.*, 781 F. Supp. 3d at 728.

29.     Defendant JAMES J. ALEX ("**Alex**") is the current Tax Commissioner of the Commonwealth of Virginia, and for purposes of this lawsuit, is sued in his official capacity.

## JURISDICTION AND VENUE

30.     This action arises under and asserts claims based on violations of the United States Constitution; therefore, this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

31.     This action also arises under and asserts a claim based on violations of the Constitution of Virginia; therefore, this Court may exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1367(a).[19]

32.     This Court has personal jurisdiction over Defendant Miyares in his official capacity as the Attorney General of Virginia because his office is located in Richmond, Virginia.

33.     This Court has personal jurisdiction over Defendant Alex in his official capacity as Tax Commissioner of the Commonwealth of Virginia because his office is located in Richmond, Virginia.

34.     The Declaratory Judgment Act authorizes this Court to grant Plaintiffs' request for

---

[19] *See Yimam v. Myle Vape, Inc.,* No. 2019 CA 008050 B, 2020 D.C. Super. LEXIS 7, at *5 (D.C. Super. June 11, 2020) (stating "if the state law claim would not exist in the absence of the FDCA, then the plaintiff[s] [are] effectively suing for a violation of the FDCA (no matter how the plaintiff[s] label[] the claim), and the plaintiff[s]' claim is thus impliedly preempted under *Buckman*" *Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341 (2001)) (internal quotations and citation omitted).

declarary relief. *See* 28 U.S.C. §§ 2201-2202.[20]

35. The Eleventh Amendment to the United States Constitution permits suits against state officials in their official capacities for prospective injunctive relief to prevent ongoing violations of federal law. *See Ex Parte Young,* 209 U.S. 123, 157-160 (1908). Such doctrine is based on the legal fiction that when state officials act in violation of the Constitution and/or federal law, said officials are "stripped of [their] official or representative character" and only applies when the state officials have "some connection with the enforcement" of the law being challenged. *See id.* at 157, 160. Therefore, this Court may enjoin Defendants from taking specific enforcement action that would violate federal law. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015).

36. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## COUNT I
### *Violation of the Supremacy Clause of the United States Constitution*

37. Pursuant to Fed. R. Civ. P. 10(c), Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

38. "A fundamental principle of the [United States] Constitution is that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citing U.S. Const., art. VI. cl. 2). Under the Supremacy Clause of the United States Constitution,

---

[20] Despite any potential argument by Defendants that Plaintiffs do ***not*** have a "legally protected interest" in the manufacturing, retail sale, or purchase of Small Tobacco vapes, Plaintiffs can properly assert standing under Article III because they can demonstrate a "judicially cognizable interest," which does not require that Plaintiffs' conduct comply with all aspects of federal law. *Compare Lujan, v. Defs. of Wildlife*, 504 U.S. 555 (1992) with *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150 (1970) (differentiating between a "judicially cognizable interest" theory of standing and the discarded "legal right" theory of standing).

federal law preempts state law "in three circumstances."[21] *English v. General Electric Co.*, 496 U.S. 72, 78 (1990). Of relevance here is the third circumstance, implied conflict preemption, which occurs when, *inter alia,* "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Thus, "even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute." *Crosby*, 530 U.S. at 372.

39. Congress' intention was to provide the federal government the sole authority to enforce the FDCA and its subsequent amendment to the TCA, which provides regulatory authority over tobacco and vape products. *See* 21 U.S.C. § 337(a) ("all such proceedings for the enforcement, or to restrain violations, of this Act shall be by and in the name of the United States"). In other words, the FDCA's and the TCA's enforcement provisions "commit complete discretion to [the FDA] to decide how and when [the enforcement provisions] should be exercised." *Heckler v. Chaney*, 470 U.S. 821, 835 (1985).[22]

40. While generally Virginia may properly retain its broad police power regarding the sale of vapes in the Commonwealth, it cannot bring enforcement actions that were otherwise exclusively entrusted to the FDA by Congress. Because "the existence of [the FDCA]" is a "critical element" of the Vape Ban, it is impliedly preempted pursuant to 21 U.S.C. § 337(a). It stands as

---

[21] "First, Congress can define explicitly the extent to which its enactments pre-empt state law." *English v. General Electric Co.*, 496 U.S. 72, 78 (1990). This is referred to as "express preemption." *See e.g., College Loan Corp. v. SLM Corp*., 396 F.3d 588 (4th Cir. 2005). "Second, in the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *English*, 496 U.S. at 79. This is referred to a "field preemption." *Id.*

[22] *See also Iowans for Alts. to Smoking & Tobacco, Inc*., 781 F. Supp. 3d at 737 (stating "Section 337(a)'s reservation of enforcement authority to the federal government applies with equal force to tobacco products regulated under the TCA as it does to other FDCA-regulated products.").

an obstacle to the federal government's exclusive authority to enforce the FDCA's and the TCA's requirements regarding the manufacture and retail sale of Small Tobacco vapes in the Commonwealth because it authorizes Defendants and their duly appointed actors to take enforcement action in the FDA's place. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001); Va. Code §§ 59.1-293.20 and 59.1-293.21.

41. Both the Vape Ban's language permitting Virginia to bring enforcement actions in the FDA's place, and its language permitting state actors to "recover reasonable costs of investigation, the costs of the action, and attorney['s] fees" when a person or entity "sell[s], distribute[s]…, or offer[s] for sale" a vape not "included in the directory established by the Attorney General," directly conflicts with the Congressional intent that the enforcement of the FDCA "shall be by and in the name of the United States." *See* 21 U.S. § 337(a); and Va. Code §§ 59.1-293.19—59.1-293.21.

42. In sum, the Vape Ban extends beyond mere general requirements for vape manufacturing and retail sales in Virginia, and instead, creates its own registration regime through the establishment of Miyares' Directory that explicitly makes the requirement of FDA premarket approval ***the determinative factor*** for access to the vape market in the Commonwealth. Therefore, at least some Small Tobacco vapes will be pulled from the Virginia market by the Vape Ban regardless of whether the FDA chooses to exercise its discretion to enforce its premarket authorization requirement for those products.

43. Plaintiffs therefore request that this Court **(i)** issue a preliminary and/or permanent injunction barring **(a)** Defendant Miyares from establishing the vape product directory, **(b)** Defendants' enforcement of the Vape Ban, and **(c)** Defendant Alex from approving Tobacco Retail Enforcement Fund expenditures and disbursements; and **(ii)** further issue a declaratory judgment

finding that the Vape Ban is preempted by the Supremacy Clause of the U.S. Constitution.

## COUNT II
*Violation of the Virginia Constitution's Prohibition of the Enactment of Special Laws*

44. Pursuant to Fed. R. Civ. P. 10(c), Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

45. "'The legislature functions under no grant of power. It can do things which are not forbidden by the State or Federal Constitutions, or which are not repugnant to those elementary social rights upon which society, as we know it, rests.'" *Lipscomb v. Nuckols*, 161 Va. 936, 944 (1934) (quoting *Council of Farmville v. Walker,* 101 Va. 323, 330 (1903)). The Virginia Constitution prohibits the enactment of "any local, special, or private law" that may "[g]ran[t] to any private corporation, association, or individual any special or exclusive right, privilege, or immunity." Va. Const. art. IV, § 14, pt. 18. "[T]he special-laws prohibitions contained in the Virginia Constitution are aimed squarely at economic favoritism, and have been so since their inception." *Benderson Dev. Co. v. Sciortino*, 236 Va. 136, 146 (1988). Sections 14 and 15 were enacted "to counter the 'sway that moneyed interests were seen to hold over state legislatures….'" *Id.* at 147 (internal citation omitted).

46. "Although all legislative enactments are entitled to a presumption of constitutionality, [Courts] have not hesitated to invalidate laws found, upon careful consideration, to violate the prohibitions against special laws." *Id.* at 148 (citing generally *Riddleberger v. Chesapeake Ry.*, 229 Va. 213 (1985); *Commonwealth v. Hines*, 221 Va. 626 (1980); *Green v. Cnty. Bd. of Arlington Cnty.*, 193 Va. 284 (1952); *Cnty. Bd. of Sup'rs. v. Am. Trailer Co.*, 193 Va. 72 (1951); *Shulman Co. v. Sawyer*, 167 Va. 386 (1937); *Quesinberry v. Hull*, 159 Va. 270 (1932); *McClintock v. Richlands Corp.*, 152 Va. 1 (1928); and *Shelton v. Sydnor*, 126 Va. 625 (1920)).

47. "'A law is special in a constitutional sense when by force of an inherent limitation

it arbitrarily separates some persons, places or things from those upon which, but for such separation, it would operate.'" *Green,* 193 Va. at 288 (quoting *Martin Ex'rs v. Commonwealth,* 126 Va. 603, 610 (1920)). "[A]n arbitrary separation must in the nature of things depend upon the person and subject of the particular act and the circumstances and conditions surrounding its passage." *Id.* (internal citations and quotations omitted). "A clause or provision special in its character applying to particular individuals, particular places or particular cases, is none the less special, because [it is] inserted in the most general of public acts." *Shelton,* 126 Va. at 637 (internal citation and quotations omitted). "Though an act be general in form, if it be special in purpose and effect, it violates the spirit of the constitutional prohibition. An evasion of the prohibition by dressing up special laws in the garb and guise of statutes will not be permitted." *Riddleberger*, 229 Va. at 218 (internal quotations and citation omitted). "'It is not, therefore, what a law includes that makes it special, but what it excludes.'" *Id.* (quoting *Shelton,* 126 Va. at 612).

48. The average cost of submitting a PMTA to the FDA is $466,563 per vape product and could even exceed $2.5 million per product,[23] forcing Small Tobacco out of the market. Thus, the financial burden of obtaining premarket approval from the FDA indirectly grants Big Tobacco a monopoly over the vape market in the Commonwealth.[24] As a result, Big Tobacco vapes are the only vapes that can be lawfully manufactured, sold, and purchased in Virginia, which violates Virginia's Constitution and the "elementary social rights upon which society [] rests." *Lipscomb,*

---

[23] U.S. SMALL BUSINESS ADMINISTRATION, *FDA Seeks Comments on Premarket Tobacco Product Applications Proposed Rule* (Oct. 1, 2019), https://advocacy.sba.gov/2019/10/01/fda-seeks-comments-on-proposed-pmta-and-recordkeeping-requirements/. *See also Van Burren v. Envii, Inc.*, No. 8:18-cv-00190-JVS-KES, 2019 U.S. Dist. LEXIS 152592, at *11 (C.D. Cal. Mar. 27, 2019).

[24] Even if Small Tobacco had the financial means to submit PMTAs for each of their individual Small Tobacco vapes, including various flavored vapes, there has been a blanket "mass denial" of flavored vape products by the FDA in recent years. *See FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 548 (2025).

161 Va. at 944 (internal quotations and citation omitted).

49. Because the Big Tobacco Affiliates had the financial means to lobby for the passage of Chapter 23.2 and the Vape Ban, they were able to create legislation written in a seemingly "general" and innocuous form, but that statutorily enshrined the Big Tobacco's monopoly. Accordingly, despite the "general" language of Vape Ban, a special purpose and effect is still created in violation of the Constitution of Virginia. *See Riddleberger*, 229 Va. at 218.

50. For these reasons, Plaintiffs request that this Court **(i)** issue a preliminary and/or permanent injunction barring **(a)** Defendant Miyares from establishing the vape product directory, **(b)** Defendants' enforcement of the Vape Ban, and **(c)** Defendant Alex from approving Tobacco Retail Enforcement Fund expenditures and disbursements; and **(ii)** further issue a declaratory judgment finding that the Vape Ban is unconstitutional under Va. Const. art. IV, § 14, pt. 18.

## COUNT III
### *Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution*

51. Pursuant to Fed. R. Civ. P. 10(c), Plaintiffs adopt by reference all preceding paragraphs as if fully set forth herein.

52. "The United States Supreme Court has 'long recognized that the [Fourteenth] Amendment's Due Process Clause "guarantees more than fair process."'" *Williams v. Panter*, 83 Va. App. 520, 533 (2025) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997))). "Under [the Fourteenth] Amendment, nothing is more clearly settled than that it is beyond the power of a state, 'under the guise of protecting the public, [to] arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them.'" *New State Ice Co. v. Liebmann*, 285 U.S. 262, 278 (1932) (quoting *Jay Burns Baking Co. v. Bryan*, 264 U.S. 504, 513 (1924)).

53. The Vape Ban is exerted in such an arbitrary and capricious manner that it constitutes the infringement, rather than the regulation, of Small Tobacco because the Virginia vape market will be accessible only to Big Tobacco. Small Tobacco will be denied equal protection of the laws and will otherwise be deprived of their property (*i.e.,* the Small Tobacco vapes themselves) without due process under the Fourteenth Amendment. In sum, the Vape Ban impermissibly discriminates between Big Tobacco and Small Tobacco without a rational basis[25] for such differential treatment.

54. Therefore, Plaintiffs request that this Court **(i)** issue a preliminary and/or permanent injunction barring **(a)** Defendant Miyares from establishing the vape product directory, **(b)** Defendants' enforcement of the Vape Ban, and **(c)** Defendant Alex from approving Tobacco Retail Enforcement Fund expenditures and disbursements and **(ii)** further issue a declaratory judgment finding that the Vape Ban is unconstitutional under the Fourteenth Amendment to the United States Constitution.

## REQUEST FOR RELIEF

WHEREFORE Plaintiffs NOVA DISTRO, INC. and TOBACCO HUT AND VAPE FAIRFAX, INC. respectfully request that this Court: **(i)** enter judgment in Plaintiffs' favor by issuing preliminary and/or permanent orders barring **(a)** Defendant JASON MIYARES from establishing the vape product directory, **(b)** Defendants' enforcement of the Vape Ban, and **(c)** Defendant JAMES J. ALEX from approving on Tobacco Retail Enforcement Fund expenditures and disbursements; and **(ii)** issue declaratory judgments pursuant to 28 U.S.C. § 2201 stating that

---

[25] Since the Vape Ban does not burden a suspect class or otherwise implicate a fundamental right, Plaintiffs concede that rational basis review should be applied to Count III. *See e.g., Pennell v. City of San Jose,* 485 U.S. 1, 14 (1988).

the Vape Ban is unconstitutional under the United States Constitution and/or the Constitution of Virginia; **(iii)** award Plaintiffs their attorney's fees and court costs; and **(iv)** for any such further relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable[26] and reserve the right to amend this Complaint to add new claims and parties as discovery may warrant.

**DATED** this 15th day of October, 2025.

**Respectfully submitted,**
**NOVA DISTRO, INC. and**
**TOBACCO HUT AD VAPE FAIRFAX, INC.**

*/s/ Stewart R. Pollock*

Stewart R. Pollock, Esq. | VSB No. 92466
Samantha R. Romano, Esq. | VSB No. 98381
Rebecca A. Roberts, Esq. | VSB No. 99524
Eric G. Reeves, Esq. | VSB No. 38149
**MORAN REEVES & CONN, PC**
1211 E. Cary Street
Richmond, VA 23219
Tel: 804.864.4832
Fax: 804.421.6251
Email: spollock@moranreevesconn.com
Email: sromano@moranreevesconn.com
Email: rroberts@moranreevesconn.com
Email: ereeves@moranreevesconn.com
*Counsel for Plaintiffs*

---

[26] "'Actions by the Government to recover civil penalties under statutory provisions [] historically had been viewed as a type of action in debt requiring trial by jury.'" *SEC v. Jarkesy,* 603 U.S. 109, 122 (2024) (quoting *Tull v. United States,* 481 U.S. 412, 418-19 (1987)). "Even when an action 'originates in a newly fashioned regulatory scheme,' what matters is the substance of the action, not where Congress has assigned it." *Id.* at 134 (quoting *Granfinanciera, S.A.* et al. *v. Norberg,* 492 U.S. 33, 52 (1989).