**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **NOVA DISTRO, INC.** | ) |
| | ) |
| and | ) |
| | ) |
| **TOBACCO HUT AND VAPE FAIRFAX, INC.** | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| v. | ) **Case No. 3:25-cv-857-DJN** |
| | ) |
| **VIRGINIA ATTORNEY GENERAL JASON MIYARES** | ) |
| *in his official capacity,* | ) |
| | ) |
| and | ) |
| | ) |
| **VIRGINIA TAX COMMISSIONER JAMES J. ALEX** | ) |
| *in his official capacity* | ) |
| | ) |
| *Defendants.* | ) |

**MEMORADUM IN SUPPORT OF PLAINTIFFS' MOTION FOR**
<u>**PRELIMINARY INJUNCTION**</u>

NOVA DISTRO, INC. and TOBACCO HUT AND VAPE FAIRFAX, INC. ("**Plaintiffs**"),

by counsel, state as follows for their Memorandum in Support of the Motion for Preliminary

Injunction [ECF No. 16] made pursuant to Fed. R. Civ. P. 65:

<u>**INTRODUCTION**</u>

Plaintiffs ask the Court to enjoin Defendants from enforcing recently enacted legislation

that unconstitutionally intrudes upon the federal government's exclusive authority to regulate

electronic nicotine delivery systems (also known as "ENDS or "e-cigarettes") and nicotine vapor

products (collectively, "**vapes**"). As set out in Plaintiffs' Complaint [ECF No. 1], certain sections

of Chapter 23.2 of the Virginia Code, entitled "*Retail Tobacco Products and Nicotine Vapor*

*Products Containing Liquid Nicotine*" ("**Chapter 23.2**") are preempted by federal law, and like

the analogous statutes that have gone into effect elsewhere in the country, those sections cannot be lawfully enforced in the Commonwealth.

Thus, Plaintiffs seek a preliminary injunction to maintain the status quo while this constitutional challenge is pending; otherwise, Plaintiffs (and others similarly situated) will suffer irreparable harm if certain sections of Chapter 23.2 are allowed to be enforced on December 31, 2025. As outlined below, Plaintiffs will demonstrate that **(i)** they are likely to succeed on the merits as shown by the prior injunction against a nearly identical statute in Iowa, **(ii)** they will suffer actual and imminent irreparable harm to their business operations without a preliminary injunction, in addition to the harm that will befall their employees, **(iii)** the balance of equities weighs in favor of awarding Plaintiffs a preliminary injunction given the minimal burden of temporarily delaying enforcement these statutes to review its constitutionality before implementing a complete overhaul of Virginia's tobacco and vape regulations, and **(iv)** the public interest weighs in favor of Plaintiffs because they would be preventing the Commonwealth from enforcing statutes likely to be found unconstitutional.

## **<u>BACKGROUND</u>**

In 2009, Congress passed the Family Smoking Prevention Tobacco Control Act ("**TCA**"), which amended the Food, Drug, and Cosmetic Act of 1938 ("**FDCA**"). The TCA explicitly instructed the U.S. Food and Drug Administration ("**FDA**") to promulgate rules and regulations relating to tobacco products offered for retail sale. *See Avail Vapor, LLC v. FDA*, 55 F.4th 409, 415 (4th Cir. 2022). While the TCA did not originally extend to vapes, their rise in popularity after the passage of the TCA led to the enactment of the "deeming" rule in 2016, which subsequently extended the FDA's regulatory authority to vapes. *See id.* (citing 21 U.S.C. § 387(b) and 81 Fed. Reg. 28,974 (May 10, 2016)); *see also* 21 U.S.C. § 321(rr)(l) (amending the TCA to clarify that

the Act covers products containing nicotine from "any source," not just tobacco). The TCA specifically requires that any new[1] tobacco or vape product receive premarket approval from the FDA before being offered for retail sale by submitting a Premarket Tobacco Product Application ("**PMTA**") for that product. *See id; see also* 21 C.F.R. §§ 1114.1(a) and 1114.5.

Obtaining premarket approval has become an increasingly elusive task for many applicants, which are often small vape manufacturers and retailers (collectively, "**Small Tobacco**"). Of the 26 million-plus PMTAs submitted by more than 500 different companies between October 2019 and February 2023,[2] only thirty-nine vape products were granted premarket approval by the FDA.[3] These thirty-nine vape products (collectively, "**Big Tobacco vapes**") were produced by ***the same four companies***: Juul Labs, Inc.; Logic Technology Development, LLC; NJOY, LLC;[4] and R.J. Reynolds Vapor Company (collectively, "**Big Tobacco**"), and ***all*** are tobacco- or menthol-flavored.[5] In contrast, the majority of vapes produced by Small Tobacco

---

[1] New products are those that were not "commercially marketed in the in the United States as of February 15, 2007.'" *Avail Vapor, LLC,* 55 F.4th at 415.

[2] Elizabeth Crespi *et al.*, *Decisions of the FDA on premarket tobacco product applications: Changes in the number of unique devices and liquids used by US adults who frequently use electronic delivery systems, 2020-2023*, TOBACCO INDUCED DISEASES (Mar. 22, 2024), https://www.tobaccoinduceddiseases.org/Decisions-of-the-FDA-on-premarket-tobacco-product-napplications-Changes-in-the-number,184240,0,2.html.

[3] *E-Cigarettes Authorized by the FDA*, U.S. FOOD & DRUG ADMINISTRATION (July 2025), https://digitalmedia.hhs.gov/tobacco/hosted/Authorized-E-Cig-July2025.pdf.

[4] Notably, NJOY, LLC was subsequently purchased by Richmond, Virginia-based tobacco giant, Altria. *See Altria Completes Acquisition of NJOY Holdings, Inc.; Updates 2023 Full-Year Earnings Guidance* (June 1, 2023), https://investor.altria.com/press-releases/news-details/2023/Altria-Completes-Acquisition-of-NJOY-Holdings-Inc.-Updates-2023-Full-Year-Earnings-Guidance/default.aspx.

[5] U.S. Food & Drug Administration, *supra,* note 3.

contain "characterizing flavors,"[6] or flavors other than tobacco or menthol[7] (collectively, "**flavored vapes**").

The disparity in the number of PMTA submissions versus approvals is presumably because applicants must **(i)** sufficiently demonstrate that the product in question provides a benefit to adult users that adequately outweighs any harm that the product might pose to underage consumers, and **(ii)** include marketing plans for such product that sufficiently restricts access to underaged consumers. *See Avail Vapor*, 55 F.4th at 425. On its face this does not seem to be an unreasonable request by the FDA; however, the FDA has effectively required that applicants "present[] ***novel*** access restrictions" to prevent underage consumption of flavored vape products.[8] *See id.* at 426 (citations omitted) (emphasis added). As such, methods that have historically been used for age-restricted consumer goods, such as alcohol[9] and traditional cigarettes, have been deemed insufficient by the FDA, which includes but is not limited to the following: **(i)** using age-gated brick and mortar stores; **(ii)** requiring age verification at the point of sale; **(iii)** selling products on

---

[6] *See Avail Vapor, LLC*, 55 F.4th at 415.

[7] *See e.g.,* Nova Distro's "Hut Bar" vape product.

[8] The FDA has seemingly determined that there is no conceivable way to prevent underage consumption of flavored vapes, regardless of whether the PMTAs applicants present "novel" method, and has effectively used this as a blanket ban on such products. *See Avail Vapor, LLC*, 55 F.4th at 415.

[9] The sale of alcoholic beverages that are popular among, and commonly subject to abuse by, underage consumers of alcohol is not limited or otherwise restricted in a different manner than alcoholic beverages that are not popular, or not as popular, amongst underage consumers of alcohol in the United States. *See* Michael Siegel, M.D., M.P.h. *et al*., *Alcohol Brand Preferences of Underage Youth: Results from a Pilot Survey among a National Sample,* NATIONAL INSTITUTE OF HEALTH (October 2011), https://pmc.ncbi.nlm.nih.gov/articles/PMC3202336/pdf/nihms310977.pdf

age-gated online stores; **(iv)** using less vibrant marketing so as to not attract interest from minors; and **(v)** prohibiting the use of marketing materials that target minors. *See id.*

This is particularly problematic for Small Tobacco, because submitting a PMTA to the FDA carries an incredible cost burden, with the average cost of submission being $466,563.00 per vape product, with a possibility of up to $2.5 million per product. *See Van Burren v. Envii, Inc.*, No. 8:18-cv-190-JVS-KES, 2019 U.S. Dist. LEXIS 152592, at *11 (C.D. Cal. Mar. 27, 2019) ("the overall average cost of compiling a [PMTA] submission…is approximately…$466,563 per PMTA for…ENDS.").[10] This is not a burden Small Tobacco can sustainably afford, especially when the submission of a PMTA provides no assurance of receiving FDA premarketing approval, and a PMTA denial may require an entirely new submission. Thus, many Small Tobacco PMTA submissions have been denied and have subsequently become part of the blanket "mass denial" of vape products that are not manufactured by Big Tobacco (collectively, "**Small Tobacco vapes**"). *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 548 (2025).

Interestingly, the "mass denial"[11] of PMTAs for Small Tobacco vapes—which often contain flavors other than tobacco or menthol—comes at a time **(i)** when 2024 data from the U.S. Centers for Disease Control and Prevention ("**CDC**") showed that 500,000 _**fewer**_ U.S. youth reported vape use compared to 2023, which is also approximately one-third (1/3) fewer than the

---

[10] *See also* U.S. SMALL BUSINESS ADMINISTRATION, *FDA Seeks Comments on Premarket Tobacco Product Applications Proposed Rule* (Oct. 1, 2019), https://advocacy.sba.gov/2019/10/01/fda-seeks-comments-on-proposed-pmta-and-recordkeeping-requirements/.

11 *Wages & White Lion Invs., LLC*, 604 U.S. at 548.

"peak" of youth usage in 2019;[12] and **(ii)** when scientific evidence continues to solidify that vape products are less harmful than traditional cigarettes, and are one of the most effective smoking cessation options.[13] Accordingly, the FDA has expressly recognized that "forcing all unauthorized [vapes] off the market could result in [vape] users reverting to more harmful traditional cigarettes." *Iowans for Alts. to Smoking & Tobacco, Inc. v. Iowa Dep't of Revenue*, 781 F. Supp. 3d 724, 728 (S.D. Iowa 2025). Thus, while many PMTAs are denied, the FDA has continually exercised its discretion[14] ***not*** to take regulatory or enforcement action with respect to Small Tobacco vapes because of the potential for overzealous enforcement, which undermines the FDA's health and safety goals.

Despite the FDA's continual decision not to enforce the regulation of Small Tobacco vapes, the Virginia General Assembly passed Chapter 23.2 in 2024, which was subsequently codified under Title 59.1 as Va. Code §§ 59.1-293.10 through 59.1-293.22. Chapter 23.2 subsequently went into effect on July 1, 2025, and certain sections aim to improperly regulate Small Tobacco vapes by entirely depending on the FDA regulations established under the TCA.[15] Accordingly, Plaintiffs

---

[12] *Youth E-Cigarette Use Drops to Lowest Level in a Decade,* U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION (Sept. 5, 2024), https://www.cdc.gov/media/releases/2024/p0905-youth-ecigarette.html (emphasis added).

[13] *See e.g.,* Nicola Lindson et al*., Electronic cigarettes for smoking cessation (Review),* COCHRANE DATABASE OF SYSTEMATIC REVIEWS, (Jan. 29, 2025), https://pmc.ncbi.nlm.nih.gov/articles/PMC11776059/pdf/CD010216.pdf (summarizing 90 studies with 29,044 participants).

[14] Discretion includes the power to choose which cases to enforce, but more importantly, includes the power to choose which cases ***not*** to pursue. Thus, when a state legislature creates its own set of rules—even if identical to the federal rules—the state unlawfully assumes the federal government's power of enforcement and the discretionary power to bring enforcement actions. *See generally, Heckler v. Chaney,* 470 U.S. 821 (1985).

[15] Plaintiffs are not seeking to challenge other provisions of Chapter 23.2 that are otherwise proper, such as the restriction on the sale of retail tobacco products to consumers under the age of twenty-one (21). *See* Va. Code § 59.1-293.12.

challenge the following sections of Chapter 23.2: **(i)** Va. Code § 59.1-293.14: *Tobacco Retail Enforcement Fund*; **(ii)** Va. Code § 59.1-293.15: *Liquid nicotine and nicotine vapor product; directory*; **(iii)** Va. Code § 59.1-293.16: *Liquid nicotine and nicotine vapor product; certification; penalty*; **(iv)** Va. Code § 59.1-293.17: *Removal or exclusion from directory*; **(v)** Va. Code § 59.1-293.19: *Recordkeeping; audits, inspections, and investigations; penalties*; **(vi)** Va. Code § 59.1-293.20: *Sale or distribution prohibited*; and **(vii)** Va. Code § 59.1-293.21: *Enforcement; inspection* (collectively, "**Vape Ban**").

Under the Vape Ban, the Virginia Attorney General—which is currently Defendant Miyares—"shall establish and maintain a directory that lists all . . . liquid nicotine and nicotine vapor products" that are authorized to be manufactured or sold within the Commonwealth. Va. Code § 59.1-293.15. For a vape to be included on the Virginia Attorney General's ("**Virginia AG**") approved vape directory ("**Directory**"), certain statutory requirements must be met: **(i)** the vape product in question must have received premarketing authorization from the FDA; or be actively under review by the FDA and the FDA has not issued a final decision or such final decision has not yet taken effect; **(ii)** the manufacturer of the vape product in question must provide a copy of the FDA's premarketing approval order along with a certification form, or provide evidence that the given vape product is actively under review by the FDA along with a certification form stating as such; and **(iii)** the manufacturer or the vape product in question must pay a $2,000 fee for the vape product's first certification submission, or pay the $500 recertification fee for that given vape product each year afterward. *See* Va. Code § 59.1-293.16(B)-(C). In the event that manufacturers or retailers produce or sell vapes that are not listed in the Directory, the Virginia AG; the Virginia Department of Taxation, specifically through Defendant Alex; and/or "any other law-enforcement

agency of the Commonwealth" are authorized to take enforcement action. Va. Code § 59.1-293.19(D).

Civil enforcement measures[16] include, but are not limited to, assessment of civil penalties in the amount of **(i)** $1,000 per day for each vape product unlawfully offered for sale until such vape is either removed from the market or otherwise approved by the Viginia AG; and **(ii)** $1,000 per day for each day that any person who receives, stores, sell, handles, or transports vapes refuses or otherwise fails to cooperate with an audit, inspection, or investigation conducted by an authorized representative of the Virginia AG relating to the preservation of records involving the purchase, sale, exchange, receipt, or transportation of vapes in the past three years. *See* Va. Code §§ 59.1-193.20 and 59.1-293.19, respectively. Imposing such civil penalties upon Plaintiffs would, among other things, shutter their operations, put their employees out of work, and completely devalue the utility of any taxes Plaintiffs have already paid to the Commonwealth (and in turn, would spawn successive litigation about the return of those funds, which is an unnecessary burden that can likely be avoided by maintaining the status quo). ***See*** **Exhibit A- Affidavit of Raad Saleh.**

The Vape Ban requires compliance with the new statutory scheme by December 31, 2025. *See* Va. Code §§ 59.1-293.16 and 59.1-293.20. Because the FDA has not granted premarket approval for the manufacture and retail sale for ***any*** Small Tobacco vapes,[17] the Vape Ban is the functional equivalent of a wholesale ban on the manufacture, retail sale, and purchase of Small Tobacco vapes in Virginia. Thus, for Plaintiffs (and other Small Tobacco manufacturers and retailers) compliance means they will either face substantial civil penalties or be forced out of

---

[16] The Vape Ban also includes statutorily imposed criminal penalties. *See e.g.*, Va. Code §§ 59.1-293.16 and 59.1-293.19.

[17] U.S. Food & Drug Administration, *supra,* note 3.

business entirely. *See FDA v. R.J. Reynolds Vapor Co*., 145 S. Ct. 1984, 1993 (2025) (internal citations omitted) ("If the FDA denies a [PMTA], the retailers, like the manufacturer, lose the opportunity to profit from the sale of the new [vape]—or, if they sell the product anyway, risk imprisonment and other sanctions.").

Therefore, Plaintiffs respectfully request that this Court **(i)** grant their Motion for Preliminary Injunction because enforcement of the Vape Ban would **(a)** usurp the federal government's regulatory enforcement authority, and **(b)** violate the Constitution of Virginia's prohibition against special laws;[18] and **(ii)** issue a preliminary injunction barring **(a)** the Virginia Attorney General from establishing the vape product Directory, **(b)** Defendants' enforcement of the Vape Ban, and **(c)** the Virginia Tax Commissioner from approving Tobacco Retail Enforcement Fund expenditures and disbursements. *See Digiacinto v. Rector & Visitors of George Mason Univ.*, 281 Va. 127, 137 (2011) ("sovereign immunity does not preclude declaratory and injunctive relief claims based on self-executing provisions of the Constitution of Virginia or claims based on federal law.").

## STANDARD OF REVIEW

The purpose of a preliminary injunction is to protect the status quo between the parties and prevent irreparable harm while litigation is pending. *See May v. R.A. Yancey Lumber Corp.*, 297 Va. 1, 18 (2019) and *Manis v. U.S. Dep't of Agric.*, No. 24-1367, 2025 U.S. App. LEXIS 21014, at *8 (4th Cir. Aug. 18, 2025). "To obtain a preliminary injunction, a party must show: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the party's favor; and (4) an injunction is in the public

---

[18] Plaintiffs also argue in their Complaint [ECF No. 1] that the Vape Ban wrongly infringes on Small Tobacco's equal protection rights and deprives them of their property. *See* Pls.' Compl. ¶¶ 51-54.

interest." *N. Va. Hemp & Agric., LLC v. Commonwealth,* 125 F.4th 472, 492 (4th Cir. 2025); *see also Manis* 2025 U.S. App. LEXIS 21014, at \*7-8 (citing *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)). Additionally, when Plaintiffs seek a preliminary injunction against the Government, as they do here, the third and fourth factors (*i.e.,* the balance of equities and the public interest factors) of the preliminary injunction standard merge because the Government's interest *is* the public interest. *See Nken v. Holder,* 556 U.S. 418, 435 (2009).

Importantly, "[t]he Supreme Court has recognized that sovereign immunity does not bar official capacity suits for injunctive relief against officers for acts that exceed their statutory or constitutional authority." *Lancaster v. Sec'y of the Navy*, 109 F.4th 283, 292, n.5 (4th Cir. 2024) (citing *Strickland v. United States*, 32 F.4th 311, 363-64 (4th Cir. 2022) and *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949)); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) (quoting *Carroll v. Safford*, 44 U.S. 442 (1845) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action" and "'in a proper case, relief may be given in a court of equity [] to prevent an injurious act by a public officer.'")). Therefore, Plaintiffs can properly seek a preliminary injunction against Defendants' enforcement of the Vape Ban.

## **ARGUMENT**

### A. **Plaintiffs are likely to succeed on the merits.**

For the reasons outlined below, Plaintiffs have a strong likelihood of proving that the Vape Ban **(i)** impliedly preempted by the TCA and FDCA pursuant to the Supremacy Clause of the U.S. Constitution; and **(ii)** violates Virginia's prohibition against the enactment of special laws pursuant to Article IV, Section 14, Part 18 of the Constitution of Virginia.

i.   **The TCA and FDCA impliedly preempts the Vape Ban; therefore, the Vape Ban violates the Supremacy Clause**

"A fundamental principle of the [U.S.] Constitution is that Congress has the power to preempt[19] state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citing U.S. Const., Art. VI, cl. 2). This fundamental principle is enshrined in the Supremacy Clause, which "provides that 'the Laws of the United States' (as well as treaties and the Constitution itself) 'shall be the supreme Law of the Land…any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.'" *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376 (2015) (citing U.S. Const., Art. VI, cl. 2). "[F]rom this constitutional command flows the principle that state laws that interfere with or are contrary to federal law must yield." *Iowans for Alts. to Smoking & Tobacco, Inc.*, 781 F. Supp. 3d at 731 (citing *La. Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 368 (1986)). "Practically speaking, this means that federal law preempts—or bars—claims under state law that either interfere with or are contrary to federal laws." *Guthrie v. PHH Mortg. Corp.,* 79 F.4th 328, 336 (4th Cir. 2023). Moreover, Preservation and Savings Clauses within an Act "do[] not bar the ordinary working of conflict pre-emption principles." *Grier v. Am. Honda Motor Co.,* 529 U.S. 861, 869 (2000).

Relevant to this action, so-called implied conflict preemption requires as "a matter of judgment, [that the inquiry] be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby*, 530 U.S. at 373. Implied conflict preemption occurs when a state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)

---

[19] State law can be preempted by federal law "in three circumstances." *English v. Gen. Elec. Co.,* 496 U.S. 72, 78 (1990). These include "express preemption," "field preemption," and "implied conflict preemption." *See id.; see also College Loan Corp. v. SLM Corp.,* 396 F.3d 588 (4th Cir. 2005).

(quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *see also Oneok, Inc.*, 575 U.S. at 377. Thus, if a state law prevents or frustrates a federal objective, it is effectively nullified by the Supremacy Clause. *See Grier,* 529 U.S. at 873 (citing *Fid. Fed. Sav. & Loan Ass'n v. De la Cuesta,* 458 U.S. 141, 153 (1982)). Furthermore, the U.S. Supreme Court has specifically "recognized that a federal statute implicitly overrides state law [] when the scope of a statute indicates that Congress intended federal law to occupy the field exclusively…." *See id.* (citing *English v. Gen. Elec. Co.,* 496 U.S. 72, 78-79 (1990)).

Here, the Vape Ban effectively allows the Commonwealth to make its own determinations about which federal requirements to enforce and to what degree to apply that enforcement, thereby frustrating the Federal Government's goals. This is because Congress' intention was to provide the federal government the ***sole*** authority to enforce the FDCA, and in turn its subsequent amendment, the TCA, which provides regulatory authority over tobacco and vape products. *See* 21 U.S.C. § 337(a) ("all such proceedings for the enforcement or to restrain violations, of this Act shall be by and in the name of the United States."); *see also Iowans for Alts. to Smoking & Tobacco, Inc.,* 781 F. Supp. 3d at 737 ("Section 337(a)'s reservation of enforcement authority to the federal government applies with equal force to tobacco products regulated under the TCA as it does to other FDCA-regulated products."). Furthermore, because "the existence of [the FDCA]" is a "critical element" of the Vape Ban, it is impliedly preempted pursuant to 21 U.S.C. § 337(a). *Porter v. Depuy Orthopaedics, Inc.*, No. 3:19-cv-007-REP, 2019 U.S. Dist. LEXIS 144007, *18 (E.D. Va. 2019). Indeed, if the FDCA's authorization requirements for vape products did not exist, neither would the Vape Ban. *See id.; see also State ex rel. Yost v. Orville Tobacco and Vape Shop*, *LLC*, No. 2024-CVC-H-327, 2025 Ohio Misc. LEXIS 10, at *6 (Wayne Cnty. Feb. 5, 2025) (finding that

state law claims were preempted under section 337(a) because "[w]ithout the application of the FDCA," the state law claims "would no longer exist.").

Moreover, the FDA has repeatedly exercised its discretion ***not*** to take enforcement action with respect to the manufacture and retail sale of Small Tobacco vapes. And Plaintiffs have no reason to believe the FDA will stop allowing the vape market to grow, nor do they have reason to believe that the FDA will halt the exercise of its discretion on a case-by-case basis. When an agency refuses "to take enforcement steps" the U.S. Supreme Court has "recognized…over many years that an agency's decision not to prosecute or enforce…is a decision generally committed to an agency's ***absolute*** discretion." *Heckler v. Chaney,* 470 U.S 821, 831 (1985) (citing *United States v. Batchelder,* 442 U.S. 114, 123-24 (1979), *Vaca v. Sipes,* 386 U.S. 171, 182 (1967), and *Confiscation Cases,* 7 U.S. 454 (1869)) (emphasis added). The Court has also recognized that "the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement" for which there are "many" reasons. *Id.* Some of those reasons are **(i)** "agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise;" **(ii)** "when an agency refuses to act it generally does not exercise its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect;" and **(iii)** "that an agency's refusal to institute proceedings shares…characteristics of the decision of a prosecutor in the Executive Branch not to indict—a decision which has long been regarded as the province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to 'take Care that the Laws be faithfully executed.'" *Id.* at 831-32 (citing U.S. Const., Art. II, § 3) (emphasis in original).

Lastly, in the context of the enforcement of the FDCA (which was amended by the TCA to provide regulatory authority over tobacco and vape products) the Court has found that "[t]he Act's enforcement provisions [] commit complete discretion to [the FDA] to decide how and when they should be exercised." *Id.* at 835. This is especially important because violation of the Vape Ban, and in turn the FDCA and TCA, provides an actionable basis to initiate proceedings against Plaintiffs and others Small Tobacco manufacturers and retailers. *See e.g.,* Va. Code § 59.1-293.21(A) ("any attorney for the Commonwealth or the attorney for any city, county, or town may cause an action to be brought in the appropriate circuit court in the name of the Commonwealth or of the county, city, or town to enjoin any violation of this chapter.").

Congress clearly intended, therefore, that only the Federal Government (*i.e.,* the FDA) has the authority to enforce the provisions of the FDCA and the TCA. As such, while Virginia generally may retain its broad police power regarding the sale of vapes, it is improper to allow it to **(i)** bring enforcement actions in place of the FDA, and **(ii)** "impose its own penalties for the federal offenses here [which] would conflict with the careful framework Congress adopted." *Arizona v. United States,* 567 U.S. 387, 402 (2012); *see also Heckler,* 470 U.S. at 835. However, despite Congress' clear intention, the Vape Ban was passed by the Virginia General Assembly and directs Defendants and other law enforcement agencies of the Commonwealth to enforce the regulation of vapes in the FDA's place. *See Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 353 (2001); *see also* Va. Code §§ 59.1-293.20 and 59.1-293.21. Specifically, Plaintiffs challenge the constitutionality of the following sections of Chapter 23.2:

- Va. Code § 59.1-293.14: *Tobacco Retail Enforcement Fund,* in part, requires the Commonwealth to collect all revenue generated from the assessment of civil penalties and credit it to a Tobacco Retail Enforcement Fund ("**Fund**"), which shall fund the "Department of Taxation's

direct and indirect costs of the…enforcement program…retail inspections, and unannounced compliance checks…." Additionally, any such "[e]xpenditures and disbursements from the Fund shall be made by the State Treasurer…upon written request signed by the Tax Commissioner." *Id.* Accordingly, the Commonwealth would be improperly attempting to assess civil penalties and then using that revenue to fund its enforcement program in place of the FDA—the entity that Congress delegated the sole authority to regulate vapes. *See Arizona,* 567 U.S. at 402; *see also Heckler,* 470 U.S at 831.

- Va. Code § 59.1-293.15: *Liquid nicotine and nicotine vapor product; directory,* requires the Virginia AG to establish and maintain a directory of all vapes authorized for retail sale in the Commonwealth. Accordingly, the Virginia AG would improperly be making determinations as to which vape products can and cannot be offered for retail sale in Virginia in place of the FDA, which "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Freightliner Corp.*, 514 U.S. at 287 (quoting *Hines*, 312 U.S. at 67).

- Va. Code § 59.1-293.16: *Liquid nicotine and nicotine vapor product; certification; penalty,* requires "every manufacturer or liquid nicotine or nicotine vapor products that are sold for retail sale in the Commonwealth, whether directly or through a wholesaler, distributor, retailer, or similar intermediary" to certify to the Virginia AG that each product in question has received an FDA premarket authorization, or a similar order. Additionally, each such certification must include a $2,000 fee, for a product's first certification, or a $500 fee "to be submitted annually for each liquid nicotine and nicotine vapor product" already listed in the Directory. *Id.* Accordingly, the FDA's sole authority to regulate vapes would be superseded in contravention of Congress' intent to have "federal law to occupy the field exclusively…." *Grier v. Am. Honda Motor Co.,* 529 U.S. 861, 873 (2000); *see also* 21 U.S.C. § 337(a).

- Va. Code § 59.1-293.17: *Removal or exclusion from directory,* requires the Virginia AG to exclude or remove from the Directory any vape product not in compliance with the provisions of Chapter 23.2. Additionally, for any vape product removed from the Directory, wholesalers, distributors, and retailers shall have thirty (30) days to sell or remove the product, or face "seizure, forfeiture, and destruction" by the Commonwealth. *Id.* Accordingly, the FDA's exclusive authority to regulate vapes would be improperly superseded. *See Heckler,* 470 U.S at 835 ("[t]he [FDCA]'s enforcement provisions [] commit complete discretion to [the FDA] to decide ***how and when*** they should be exercised") (emphasis added).

- Va. Code § 59.1-293.19: *Recordkeeping; audits, inspections, and investigations; penalties,* in part, requires the Virginia Department of Taxation to impose and collect a $1,000 penalty for each day a person or entity fails, or refuses to allow and/or cooperate with an audit, inspection, or investigation of business records related to the manufacture or retail sale of vapes. The Virginia AG; the Virginia Tax Commissioner; and/or "any other law-enforcement agency of the Commonwealth" are authorized to take enforcement action. *See id.* Accordingly, the Commonwealth would be improperly attempting to assess civil penalties in place of the FDA— the entity that Congress delegated the sole authority to regulate vapes. *See Arizona,* 567 U.S. at 402; *see also Heckler,* 470 U.S at 831.

- Va. Code § 59.1-293.20: *Sale or distribution prohibited,* prohibits the import, distribution, or sale of any vape product not listed in the Virginia AG's Directory, beginning on December 31, 2025. Any person who violates this section is subject to a $1,000 fine per day, per unlisted product sold. *See id.* Accordingly, the FDA's exclusive authority to regulate vapes would be superseded. *See* 21 U.S.C. § 337(a) ("enforcement…of this Act shall be by and in the name of the United States"); *see also Arizona,* 567 U.S. at 402.

- Va. Code § 59.1-293.21: *Enforcement; inspection,* grants "any attorney for the Commonwealth or the attorney for any city, county, or town" a cause of action to recover damages against any person who violates the provisions of Chapter 23.2. Additionally, this section permits the Virginia AG to impose on any retailer or wholesaler that sells or distributes any vape products in the Commonwealth, scheduled or unscheduled compliance checks. *See id.* Accordingly, the FDA's sole authority to regulate vapes would be superseded. *See* 21 U.S.C. § 337(a) ("enforcement…of this Act shall be by and in the name of the United States"); *see also Heckler,* 470 U.S at 835.

There is no question that the Vape Ban is a textbook example of implied conflict preemption because it "stands as an obstacle" to the federal government's exclusive authority to enforce the FDCA's and the TCA's requirements regarding the manufacture and retail sale of Small Tobacco vapes in the Commonwealth. *Freightliner Corp.*, 514 U.S. at 287 (1995) (quoting *Hines*, 312 U.S. at 67); *see also* 21 U.S.C. § 337(a); *Heckler,* 470 U.S at 835; *Arizona,* 567 U.S. at 402; *Buckman Co.*, 531 U.S. at 353. Therefore, because Plaintiffs can successfully demonstrate that the Vape Ban is preempted by the FDCA and TCA, they are likely to succeed on the merits. *N. Va. Hemp & Agric., LLC,* 125 F.4th at 492.

**ii.    The Vape Ban violates the Virginia Constitution.**

While the Commonwealth of Virginia is permitted to "'do things which are not forbidden by the State or Federal Constitutions, [and] which are not repugnant to those elementary social rights upon which society, as we know it," the Commonwealth cannot enact legislation that violates the Constitution of Virginia. *Lipscomb v. Nuckols*, 161 Va. 936, 944 (1934) (quoting *Council of Farmville v. Walker*, 101 Va. 323, 330 (1903)). Specifically, the Virginia Constitution prohibits its General Assembly from enacting "any local, special, or private law" that may "[g]ran[t] to any

private corporation, association, or individual any special or exclusive right, privilege, or immunity." Va. Const. art. IV, § 14, pt. 18. By prohibiting Virginia businesses from selling products that are not included in the Directory – a list that will likely consist of exclusively includes Big Tobacco vapes – the Commonwealth would grant Big Tobacco a *de facto* monopoly. In doing so, the Commonwealth would be picking winners and losers in the marketplace, which is precisely the sort of economic favoritism that is prohibited by the Constitution of Virginia. *See id.*

A "special" law is one that "by force of an inherent limitation [] arbitrarily separates some persons, places or things [which] but for such separation, [] would operate,'" equally with regard to persons, places, or things. *Green v. Cnty. Bd. of Arlington Cnty.*, 193 Va. 284, 288 (1952) (quoting *Martin Ex'rs v. Commonwealth*, 126 Va. 603, 610 (1920)). Importantly, even if "an act [is] general in form, [it can still] be special in purpose and effect, [which] violates the spirit of the constitutional prohibition;" thus, "dressing up special laws in the garb and guise of [general] statutes will not be [tolerated]." *Riddleberger v. Chesapeake W. Ry.*, 229 Va. 213, 218 (1985) (internal quotations and citations omitted). Accordingly, what makes a law special is "what it excludes." *Id.* (citing *Martin's Ex'rs,* 126 Va. at 612). Therefore, the Constitutional purpose of the prohibition against special laws serves is to prevent economic favoritism and "to counter the 'sway that moneyed interests were seen to hold over state legislatures….'" *Benderson Dev. Co. v. Sciortino*, 236 Va. 136, 146-47 (1988) (internal citations omitted).

Here, the Virginia General Assembly enacted a law that is "special in purpose and effect." *Riddleberger*, 229 Va. at 218. Because of the Vape Ban's incorporation of the FDA's premarket

approval requirements and its accompanying cost-prohibitive PMTA process,[20] it has "by force of an inherent limitation [] arbitrarily separate[d]" Small Tobacco that "but for such separation [] would operate" and apply equally to both Big Tobacco and Small Tobacco. *Green*, 193 Va. at 288 (internal quotations and citation omitted). In other words, the financial burden of obtaining premarket approval combined with the lack of premarket approval for ***any*** Small Tobacco vape[21] by the FDA indirectly grants Big Tobacco a monopoly over the vape market in the Commonwealth. *See* Va. Const. art. IV, § 14, pt. 18 (prohibiting granting "any private corporation, association, or individual any special or exclusive right, privilege, or immunity.").

The enactment of a special law (*i.e.,* the Vape Ban) in a general and otherwise innocuous form is no accident but rather the intended result of Big Tobacco's lobbying efforts in Virginia, which has also been successful in getting other states (*e.g.,* Iowa[22] and Utah[23]) to enact similar statutes. However, permitting only Big Tobacco vapes to be lawfully manufactured, sold, and purchased in the Commonwealth, clearly violates the Constitution of Virginia and the "elementary

---

[20] The average cost of submission is $466,563 per product and may even exceed $2.5 million per product. *See* U.S. Small Business Administration, *FDA Seeks Comments on Premarket Tobacco Product Applications Proposed Rule* (Oct. 1, 2019), https://advocacy.sba.gov/2019/10/01/fda-seeks-comments-on-proposed-pmta-and-recordkeeping-requirements/. *See also Van Burren v. Envii, Inc.*, No. 8:18-cv-00190-JVS-KES, 2019 U.S. Dist. LEXIS 152592, at *11 (C.D. Cal. Mar. 27, 2019).

[21] U.S. Food & Drug Administration, *supra,* note 3.

[22] *See e.g.,* Iowa Code § 453A.52 *Vapor products directory—established—requirements*; § 453A.52A *Vapor products—requirements*; § 453A.52B *Penalties*; and § 453A.52C *Compliance checks* (2025).

[23] *See e.g.,* Utah Code § 76-9-1112 *Illegal provision of smokeless tobacco or electronic cigarette product—Exceptions*; § 76-9-1114 *Illegal distribution of a flavored electronic cigarette product*; § 76-9-1115 *Illegal distribution of an electronic cigarette product without federal authorization*; and § 76-9-1116 *Unlawful sale of a tobacco product, electronic cigarette product, or nicotine product* (2025).

social rights upon which society [] rests." *Lipscomb*, 161 Va. at 944 (internal quotations and citations omitted); *see also See* Va. Const. art. IV, § 14, pt. 18.

Plaintiffs' biggest concern is that the structure of the Vape Ban collectively creates "winners" and "losers" (i.e., creates to categories: those for which the Vape Ban is beneficial and those for which it is detrimental). For example, the Vape Ban specifically requires that "The Attorney General [] establish and maintain a directory that lists all liquid nicotine or nicotine vapor product ***manufacturers*** and liquid nicotine and nicotine vapor ***products*** ...." Va. Code § 59.1-293.15 (emphasis added). Thus, the Virginia AG is essentially selecting which manufacturers (presumably the Big Tobacco manufacturers), and which products (presumably the Big Tobacco vape products) make the cut to be listed on the Directory. *See id.*

While the Virginia legislature may not enact laws that grant special privileges to certain businesses, there are constitutionally permissible means available for the Commonwealth to regulate tobacco and nicotine products. The problem with the Vape Ban is ***not*** that it seeks to regulate vapes or limit the sale of certain types of products. The problem is that it will pick specific winners and losers by identifying a narrow list of products that can be sold, thereby designating the manufacturers of those products as winners.[24] This violates the Constitution of Virginia and is

─────────────────

[24] Notably, while the Vape Ban's enforcement is specifically required to begin on December 31, 2025, which is less than six weeks from now, the General Assembly did not provide a specific date by which the Directory needs to be published by. *See* Va. Code §§ 59.1-293.15 and 59.1-293.20. The *de minimis* temporal gap between the publication of the Directory and its enforcement creates notice and due process issues that further underscore the other constitutional infirmities.

not necessary. Instead, Virginia could simply regulate products based on their characteristics rather than utilizing a list of approved products.[25]

Therefore, because Plaintiffs can successfully demonstrate that the Vape Ban violates the Virginia Constitution, they are likely to succeed on the merits. *N. Va. Hemp & Agric., LLC,* 125 F.4th at 492.

### B.  Plaintiffs will suffer irreparable harm in the absence of preliminary relief.

"To establish irreparable harm, [Plaintiffs] must make a 'clear showing' that [they] will suffer harm that is 'neither remote nor speculative, but actual and imminent.'" *Mt. Valley Pipeline, LLC v. 6.56 Acres,* 915 F.3d 197, 216 (2019) (quoting *Direx Isreal, Ltd. v. Breakthrough Med. Corp.,* 952 F.2d 802, 812 (4th Cir. 1991)). Here, Plaintiffs can both **(i)** make a "clear showing" they will suffer "actual and imminent" harm if the Vape Ban is enforced and **(ii)** demonstrate that the Vape Ban is unconstitutional. *Direx Isreal, Ltd.,* 952 F.2d at 812; *see also Leaders of a Beautiful Struggle, v. Balt. Police Dep't,* 2 F.4th 330, 346 (4th Cir. 2021).

Firstly, when "there is a likely constitutional violation, the irreparable harm factor is satisfied." *See Leaders of a Beautiful Struggle,* 2 F.4th at 346 (citing *Mills v. District of Columbia,* 571 F.3d 1304, 1313 (D.C. Cir. 2009) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)) ("It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time,

---

[25] In contrast, Nebraska is trying to approach this in an objective and equitable manner that does convey special privileges. For instance, in §§ 4(2) and 7 respectively, proposed Nebraska Legislative Bill 285 states licensees "shall not market, advertise, sell, or cause to be sold any flavored vapor product," and "[a] manufacturer shall not cause to be sold at retail in this state any type or model of electronic nicotine delivery system which is a flavored vape product." Thus, it is focused on what **_type_** of vape product should be **_prohibited_** in the state of Nebraska, rather than which specific products and specific manufacturers will be **_permitted_** in Virginia like the Vape Ban does. Therefore, Small Tobacco would still be (i) able to manufacture and sell their own tobacco- and menthol-flavored vapes within the Nebraska, rather than having all their products removed from the market, and (ii) provided adequate time to prepare and comply with the new laws.

unquestionably constitutes irreparable injury.'"). Here, as outlined above, the Vape Ban violates the Supremacy Clause of the U.S. Constitution, and thus, a constitutional violation has occurred.

Secondly, assuming *arguendo* that the Vape Ban did not violate the U.S. Constitution, Plaintiffs still satisfy the irreparable harm factor. Plaintiffs will suffer "actual and imminent harm"[26] because they must choose between weathering **(i)** the assessment of substantial civil penalties[27] for continuing to sell vape products not included in the Directory,[28] or **(ii)** the discontinuance of manufacturing and retail sales operations. ***See* Exhibit A**. Either situation would likely force Plaintiffs out of business. *See id.* Importantly, proof of irreparable harm does not require Plaintiffs to show that their businesses would likely be unsuccessful in ***every*** possible situation. *See e.g., Tom Doherty Assocs. v. Saban Entm't Inc.,* 60 F.3d 27, 38 (2d Cir. 1995) ("where we have found irreparable harm, the very viability of the [Plaintiffs'] business, [] or substantial losses of sales beyond those of the terminated product [] have been threatened.") (internal citations omitted). Specifically, Nova Distro will be unable to sell ***any*** of the products it currently manufactures, thereby completely eliminating the viability of its business; and Tobacco Hut will lose the sales of other products that consumers simultaneously purchase with their Small Tobacco vapes, ***and*** will be required to ***exclusively*** sell Big Tobacco vapes, which garner such nominal

---

[26] *See Direx Isreal, Ltd.,* 952 F.2d at 812.

[27] As well as potential criminal penalties. *See e.g.,* Va. Code §§ 59.1-293.16 and 59.1-293.19.

[28] The likelihood of such penalties has been unnecessarily magnified by the timing of the Vape Ban and the release of the approved products list. *See* Va. Code § 59.1-293.16. Just six weeks before enforcement is scheduled to begin, there is no clear list identifying which products will be allowed to be sold in Virginia, preventing Plaintiffs (and other Small Tobacco manufacturers and retailers) from having fair notice and an opportunity to prepare for the implementation of the Vape Ban.

profit margins that the retailer will not be able to financially stay afloat. *See* Exhibit A. It is also important to note that if Plaintiffs cannot manufacture and sell Small Tobacco vapes, and in turn must close their businesses, hundreds of Virginians would be out of a stable job, and dozens of commercial landlords across the Commonwealth would lose paying tenants. *See id.*

Plaintiffs' harm is compounded even further by the reality that the doctrine of sovereign immunity forecloses any ability to recover monetary damages from Defendants. *See e.g., Lancaster v. Sec'y of the Navy,* 109 F.4th 283, (4th Cir. 2024) ("sovereign immunity bars monetary claims against officers in their official capacity since such suits effectively operate against the sovereign itself.") and *Hutto v. S.C. Ret. Sys.,* 773 F.3d 536, 549 (4th Cir. 2014) ("State officials sued in their official capacities for retrospective money damages have the same sovereign immunity accorded to the State."). Accordingly, there is no question that Plaintiffs (and their employees) will be harmed, because most of Plaintiffs' revenue comes from the niche market for Small Tobacco vapes. *See* Exhibit A.

Moreover, Plaintiffs (like other Small Tobacco entities) pay Virginia excise and/or sales taxes on Small Tobacco vapes at the time that those products are purchased. Because Plaintiffs have already paid Virginia excise and/or sales tax on the Small Tobacco vapes, the Commonwealth will experience a significant reduction in future tax revenue that would otherwise be collected from the sale of Small Tobacco vapes. *See id.* Thus, if Plaintiffs are barred from selling Small Tobacco vapes,[29] they can petition for a return of those state taxes, which will further reduce Virginia's tax revenue. *See* Va. Code § 58.1-1826 ("If the court is satisfied that the applicant is erroneously or

---

[29] *See also Harper v. Va. Dep't of Taxation* 250 Va. 184, 187 (quoting *Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 817 (1989) ("'having conceded that a refund is appropriate in these circumstances,' the appellant 'is entitled to a refund' to the extent he 'has paid taxes pursuant to [an] invalid tax scheme,'" which was found to have violated the Supremacy Clause of the U.S. Constitution)).

improperly assessed with any taxes…the court may order that the assessment or action be corrected…. The court may order that any amount which has been improperly collected be refunded to such applicant….); *see also Harper v. Va. Dep't of Taxation,* 250 Va. 184, 195-96 (1995) (finding that the word "may" in the tax refund statute is mandatory, and that it would be erroneous to "place any reliance [] on the Commonwealth's declaratory judgment procedure as a means to avoid providing meaningful backward-looking relief in the form of refunds."). And if those Virginia taxes are not promptly refunded, secondary litigation seeking tax refunds will likely ensue. These systemic effects would be felt by the hundreds (or thousands) of other Small Tobacco entities across the Commonwealth, causing cascading economic harm that is both unnecessary and impossible to rapidly unwind. All of this can be avoided simply by maintaining the status quo until this case is decided on its merits.

In short, Plaintiffs have sufficiently met the irreparable harm prong of the preliminary injunction test, and as such, ask this Court to preserve the status quo until a determination on the merits is made. *See Leaders of a Beautiful Struggle,* 2 F.4th at 346; *Direx Isreal, Ltd.,* 952 F.2d at 812; *May*, 297 Va. at 18; and *Manis*, 2025 U.S. App. LEXIS 21014, at *8.

## C.  The balance of equities and public interest factors weigh in favor of preliminary relief.

When Plaintiffs seek a preliminary injunction against the Government, the balance of equities and the public interest factors merge because the Government's interest ***is*** the public interest. *See Nken,* 556 U.S. at 435. Furthermore, "the balance of the equities favors preliminary relief" because Defendants, who are designees of the Government sued in their official capacity, would "***in no way harmed*** by the issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional." *Leaders of a Beautiful Struggle,* 2 F.4th at 346 (internal quotations and citation omitted) (emphasis added).

Additionally, when irreparable harm is shown by demonstrating a likely constitutional violation, "[t]he remaining *Winter* [v. *Nat. Res. Def. Council, Inc.*] factors counsel in favor of preliminary relief." *Id.*; *see also Utah Vapor Bus. Ass'n, Inc. v. State,* 772 F. Supp. 3d 1274, 1288 (D. Utah 2025) (Even if "Defendants argue that Plaintiffs' harm is outweighed by the public's interest in reducing youth e-cigarette use[,] the interest in reducing youth e-cigarette use does not outweigh the protection of [Plaintiffs'] constitutional rights."). "Likewise, the balance of equities favors preliminary relief because 'our precedent counsels that "…the issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional…is improved by such an injunction."'" *Id.* (citing *Centro Tepeyac v. Montgomery Cnty.,* 722 F.3d 184, 191 (4th Cir. 2013) (quoting *Giovani Carandola, Ltd. v. Bason,* 303 F.3d 507, 521 (4th Cir. 2002)).

Here, because Plaintiffs (and other Small Tobacco vape manufacturers, retailers, employees, and consumers) ***would*** be harmed without a preliminary injunction, and Defendants would suffer ***no harm***, the balance of equities favors granting Plaintiffs a preliminary injunction. *See id.* Furthermore, since Defendants' interest ***is*** the public interest, and "it is well-established that the public interest favors protecting constitutional rights," the public interest also favors granting Plaintiffs a preliminary injunction. *Id.* (citing *Centro Tepeyac,* 722 F.3d at 191). Accordingly, Plaintiffs have satisfied the balance of equities and public interest factors needed for a preliminary injunction to be issued. *See id.; see also Nken,* 556 U.S. at 435.

## <u>CONCLUSION</u>

For the reasons outlined above, Plaintiffs have demonstrated (1) a likelihood of success on the merits, (2) actual and imminent irreparable harm that would occur without a preliminary injunction, (3) that the balance of equities weighs in favor of preliminary injunction, and (4) that

preventing the state from enforcing restrictions likely to be found unconstitutional is in the public interest. *See N. Va. Hemp & Agric., LLC,* 125 F.4th at 492.

## REQUEST FOR RELIEF

**WHEREFORE** Plaintiffs NOVA DISTRO, INC. and TOBACCO HUT AND VAPE FAIRFAX, INC. respectfully request that this Court grant their Motion for Preliminary Injunction barring **(a)** the Virginia Attorney General from establishing the vape product Directory, **(b)** Defendants' enforcement of the Vape Ban, and **(c)** the Virginia Tax Commissioner from approving Tobacco Retail Enforcement Fund expenditures and disbursements, and for any such further relief this Court deems just and appropriate.

**DATED** this 20th day of November, 2025.

**Respectfully submitted,**
**NOVA DISTRO, INC. and**
**TOBACCO HUT AND VAPE FAIRFAX, INC.**

By: */s/ Stewart R. Pollock*
    Stewart R. Pollock, Esq. | VSB No. 92466
    Samantha R. Romano, Esq. | VSB No. 98381
    Eric G. Reeves, Esq. | VSB No. 38149
    **MORAN REEVES & CONN, PC**
    1211 E. Cary Street
    Richmond, VA 23219
    Tel: 804.421.6250
    Fax: 804.421.6251
    Email: spollock@moranreevesconn.com
    Email: sromano@moranreevesconn.com
    Email: ereeves@moranreevesconn.com
    *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that on this 20th day of November, 2025 the foregoing was filed using the CM/ECF System.

Erika Maley, Esq. | VSB No. 97533
**HUNTON ANDREWS KURTH, LLP**
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: 202.955.1858
Email: EMaley@hunton.com

and

Jason S. Miyares, Esq. | VSB No. 71285
Steven G. Popps, Esq. | VSB No. 80817
Thomas J. Sanford, Esq. | VSB No. 95965
**OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA**
202 North Ninth Street
Richmond, VA 23219

*Counsel for Defendants*

By: */s/ Stewart R. Pollock*